[No. 15772. Department Two. July 12, 1920.]

LOUIS H. MOORE, *as State Bank Examiner etc.,* *Appellant,* v. JOSEPH KILDALL, *Respondent.*[1]

BILLS AND NOTES (132)—EVIDENCE (168)—COLLATERAL AGREEMENT LIMITING LIABILITY—PAROL EVIDENCE. In the absence of fraud or mistake, the principal maker of a promissory note cannot set up an independent collateral agreement limiting or exempting him from liability.

BILLS AND NOTES (7)—CONSIDERATION—SUFFICIENCY. There is sufficient consideration for a note to a bank, where it was given in settlement of the indebtedness of a corporation in which the maker was interested and the maker was to receive the balance due after collateral securities of the corporation had been sold by the bank.

SAME (7)—CONSIDERATION—ESTOPPEL. After the insolvency of a bank, the makers of a promissory note given as "live paper" to deceive the bank examiner, is estopped to allege want of consideration.

Appeal from a judgment of the superior court for King county, Grimshaw, J., entered July 19, 1919, upon findings in favor of the defendant, in an action on contract, tried to the court. Reversed.

*C. H. Winders,* for appellant.

MOUNT, J.—This action was brought by the state bank examiner, in charge of and liquidating the German-American Mercantile Bank, an insolvent state banking corporation, to recover a balance due upon a demand promissory note in the sum of $3,240.45, executed by the defendant to the German-American Mer-

[1]Reported in 191 Pac. 394.

cantile Bank on September 25, 1916, and for the fore-closure of certain collateral securities. The defense was, in substance, that there was no consideration for the note and that, at the time the note was executed, an oral agreement was entered into between the maker of the note and the president and cashier of the bank that the maker should not be required to pay the note, but that the bank would foreclose certain described collateral security and, after deducting the amount of the note, turn the balance of the proceeds over to the maker of the note. On these issues the case was tried to the court without a jury, and resulted in a judgment in favor of the defendant. The plaintiff has appealed.

Upon the trial of the case, over the objection of the appellant, the respondent testified, among other things, as follows:

"Mr. Carstens and Mr. Riley called me up to the bank and they wanted to discuss this Kildall Fishing & Packing Co. business, and they would like to have me put it in some kind of shape so that they could handle it and carry it along without being past due paper, and I says, 'Well,' I says, 'I don't owe the indebtedness; I don't see how I can fix it up.'

"Then Mr. Carstens says, 'Well,' he says, 'you can handle these matters—these securities better and get something easier out of it than we can.' 'Well,' I says, 'Mr. Carstens, the securities are all right, they are worth a great deal more than the indebtedness to the bank.' . . .

"Well, then Mr. Carstens and Mr. Riley were both present, and he said, 'Well, now, you better give your note for this and let us carry that on this security, in order to have live paper, and we will carry it on an indefinite period for you and you pay the interest and you get the security.' So I stated, 'I don't want to give my note and obligate myself in a way where it is going to work a hardship on me,' I said, 'I consider the securities is worth considerable, and will be,' and

we discussed it pro and con, and finally I said, 'Now, I will tell you what I will do; if you will agree to foreclose on this stock and on the tide land lease and take care of the Buckley bank's in addition to it, so that I can get all this property back, I will give my note, if you carry it so that it won't bother me to pay it eventually, but you are to foreclose on all that security and get it back to me.' And Mr. Carstens says, 'That will be all right, Kildall,' he says, 'that will be much better for us to carry it that way, and of course we have been doing business with you and depend upon you in these matters, and I would like to have it in that shape.' 'Well,' I says, 'with that understanding, I will give you my note'.''

Based upon this testimony, the trial court was of the opinion that the respondent did not owe the note and, apparently for that reason, made findings and entered judgment in favor of the respondent.

The Mr. Carstens and Mr. Riley referred to in this evidence were president and cashier, respectively, of the German-American Mercantile Bank at that time. The appellant argues that the court erred in admitting this testimony. This contention must be sustained. This court in a number of cases has stated the rule to be in cases of this kind that, in the absence of fraud or mistake, it is incompetent for one who signs a promissory note as principal to set up an independent collateral agreement limiting or exempting him from liability. He is bound by the terms of his obligation. *Anderson v. Mitchell,* 51 Wash. 265, 98 Pac. 751. A number of cases are there cited to that effect.

In the case of *Bank of California v. Starrett,* 110 Wash. 231, 188 Pac. 410, in discussing this question, we said:

"By the terms of the negotiable instruments act, an accommodation party to a note is primarily liable thereon. His engagement is to pay the note according

to its tenor, and is so holden to the payee even if, at the time of taking it, the payee knew he was but an accommodation party. Rem. Code, §§ 3420, 3551, 3582. While the rule is not uniform even in those states which have adopted the negotiable instruments act, it is generally held that a contemporaneous parol agreement limiting the liability of such a maker, or fixing a collateral source of payment, is not available as a defense. Such was our holding in *Van Tassel v. McGrail*, 93 Wash. 380, 160 Pac. 1053, where a number of our cases to the same effect will be found collected. See, also, *Bradley Engineering & Mfg. Co. v. Heyburn*, 56 Wash. 628, 106 Pac. 170, 134 Am. St. 1127. To permit the agreement pleaded to be shown would, therefore, be a violation of the parol evidence rule as we have heretofore announced it.''

The defense pleaded was, therefore, insufficient, and the evidence offered in support of that defense was erroneously admitted.

The record shows that there was sufficient consideration for the note. The respondent executed the note in question in place of an indebtedness owing by the Kildall Fishing & Packing Company to the bank. The security referred to had been deposited by the Kildall Fishing & Packing Company with the bank as security for the payment of its indebtedness to the bank. The respondent here was the president of the Kildall Fishing & Packing Company and, we think the record shows, was an indorser upon its notes. But whether he was an indorser or not, according to his own evidence, he executed this note to the bank in settlement of the indebtedness of the Kildall Fishing & Packing Company and was to receive therefor the balance due after the securities of the Kildall Fishing & Packing Company had been sold. This of itself was a sufficient consideration for the note. If the note was given as ''live paper'' to make an appearance of assets so as to deceive the bank examiner, as is intimated by the

testimony of the respondent above quoted, "It has been held that the receiver, representing the creditors, could maintain the action, and the makers were estopped upon the insolvency of the bank to allege want of consideration." *Golden v. Cervenka*, 278 Ill. 409, 116 N. E. 273. It follows, therefore, that, since there was sufficient consideration and an estoppel to deny consideration, and since the oral agreement could not be taken into consideration, the trial court should have entered judgment upon the note.

The judgment appealed from is therefore reversed, and the cause remanded with instructions to enter judgment as prayed for in the complaint.

HOLCOMB, C. J., FULLERTON, TOLMAN, and BRIDGES, JJ., concur.